UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

In re

**ANNA LEE FULLMER,**

Debtor.

Case No. **21-20215-BPH**

**MEMORANDUM OF DECISION**

**I.     Introduction**

This Chapter 13[1] bankruptcy case illustrates how a debtor's fortunes may change during the term of a plan. Despite confirming a plan that required monthly payments of $2,245, debtor Anna Lee Fullmer ("Debtor") was unable to keep up. As a result, the payment was modified to $999 per month, later increased to $1,130, and now Debtor seeks to increase the plan payment to $1,683 for the remaining term of the plan. With the benefit of hindsight, these modifications were necessitated by a combination of unexpected changes in Debtor's expenses, mistaken calculations for taxes, and attorneys' fees. The Code recognizes that a debtor's income and expenses are unlikely to remain static during the term of a plan. To account for the changes and provide flexibility, the Code authorizes modifications of the confirmed plan, including increasing or decreasing payments to classes of creditors. The right to modify a plan is not unlimited and, in some instances, a proposed modification may not be approved.

Before the Court is Debtor's proposed modification of her confirmed Chapter 13 plan which seeks to increase her monthly plan payment from $1,130 to $1,683. Doc. 153. Chapter 13 Trustee Kathleen A. McCallister ("Trustee") objected to the modification in part, arguing that payments should be increased by an even greater amount than proposed by Debtor. Trustee urges this Court to modify the plan and increase the monthly payment almost 300%, from $1,130 to $3,253.70.[2]

A hearing was held on September 4, 2025. Appearances were noted on the record. The Court heard testimony from the Debtor and Trustee, and Exhibits 100–03, 106–13, 117–20, 123, 124, 129, 134–38, 149, 144–50, 200–17, and 219–28 were admitted. For the reasons stated below, Debtor's motion to modify is granted in part and denied in part.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] The procedural history involving competing motions to modify the plan by Trustee and Debtor is complicated and not relevant to this Court's decision.

MEMORANDUM OF DECISION – 1

## II. Jurisdiction and Venue

Modification of a confirmed Chapter 13 plan concerns the administration of the estate and thus is a core proceeding under 28 U.S.C. § 157(b)(2)(A); *see Leichty v. Danielson (In re Leichty)*, 2024 WL 1108599, *1–2 (9th Cir. Mar. 14, 2024). Pursuant to 28 U.S.C. § 157(b)(1), this Court may hear, determine, and enter final orders and judgments in core proceedings. *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004). Accordingly, this Court has jurisdiction to adjudicate the dispute herein.

Venue is proper in the district where the underlying case is pending. 28 U.S.C. §§ 1391(b), 1409(a). The Debtor's bankruptcy case is pending before this Court. Accordingly, venue is proper in this Court.

## III. Background and Facts

Debtor filed her voluntary petition under Chapter 13 on May 26, 2021. Debtor's initial Chapter 13 plan was confirmed on September 8, 2021, and required monthly payments of $2,245 over 60 months.[3]

Debtor's plan has been modified three times since confirmation. First, on March 30, 2023, Debtor's plan was modified to increase the amount of fees and costs paid to Debtor's counsel.[4] Second, on August 16, 2023, Debtor's plan was modified to provide for a § 1305 claim from the Idaho State Tax Commission ("ISTC").[5] The second modification reduced Debtor's monthly payment under the plan from $2,245 per month to $999 per month.[6] Third, on August 27, 2024, Debtor's plan was again modified to increase monthly payments from $999 to $1,130 in order to provide for additional attorneys' fees and costs.[7] The additional attorneys' fees relate to the modification efforts.

Debtor's plan modifications correspond to challenges she has encountered during the term of this plan. Both Debtor and her husband suffer from mental health issues.[8] Debtor's mental health issues arose in part from her occupation as a nurse manager during the COVID-19

---

[3] Doc. 2 at 1.

[4] Doc. 47.

[5] Doc. 64. Curiously, although the Order at Doc. 64 does not explicitly direct the Trustee to pay this § 1305 claim, the parties apparently performed as if it did ("Although this payment was already provided for in a prior Modification (ECF 57), and paid by the prior Trustee, it appears that three percent interest was not paid."). Doc. 153 at 3.

[6] *Id.*

[7] Doc. 78.

[8] Doc. 181 at 00:28:12–00:31:20.

MEMORANDUM OF DECISION – 2

pandemic, and the stress and strain imposed on Debtor during that time.[9]

Other medical issues include chronic neuropathy, diabetes, and alopecia.[10] Debtor's husband, who is unable to work, suffers from severe medical issues including foot wounds that necessitate weekly wound care.[11] Debtor's health insurance does not cover all of the medical expenses attendant to these issues, including wigs for her alopecia, diabetic shoes for her husband, and various health supplements.[12]

Both Debtor and her husband suffer from dental issues and past-due dental work.[13] Debtor's husband's teeth are falling out, which will require a procedure costing thousands of dollars to remedy.[14] Debtor's dental insurance does not cover the cost of all the dental work that needs to be done for herself and her husband.[15]

In addition, Debtor is religious and tithes as a part of her religion but, despite including tithing in past budgets, she has been unable to tithe during this case due to medical costs and difficulty making ends meet.[16] Debtor has suffered religious consequences for her failure to tithe but intends to resume tithing going forward.[17]

Debtor's house is "falling apart," in part because her husband is unable to contribute to the household due to his medical and mental health issues.[18] Debtor's house has a leaking sink, broken furnace, and a collapsing roof.[19] Most troubling was Debtor's testimony that she has resorted to using space heaters to heat her home in the winter.[20] Debtor has attempted to save

---

[9] *Id.*

[10] *Id.* at 00:17:04–00:25:12.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 00:25:13–00:27:25; 00:51:20–00:53:00.

[14] *Id.* at 00:25:13–00:27:25.

[15] *Id.* at 00:51:20–00:53:00.

[16] *Id.* at 00:14:15–00:17:02; 02:14:00–02:14:24. Tithing is statutorily excluded from disposable income under § 1325(b)(2)(A)(ii).

[17] *Id.* at 00:14:15–00:17:02.

[18] *Id.* at 00:47:37–00:51:08.

[19] *Id.*

MEMORANDUM OF DECISION – 3

money for a new water heater while her case is ongoing.[21] Debtor's testimony related to her health, home, religious, and dental issues was credible and often, unrefuted.

Now before the Court is Debtor's fourth motion to modify the confirmed plan.[22] The Motion proposes an increased plan payment, allowance of § 1305 tax claims filed by the IRS and ISTC as priority claims, and payment of those tax claims through the plan with interest. There is a further request to pay additional attorneys' fees incurred litigating various issues with the Trustee through the plan.

### IV. Parties' Positions

Trustee objects to the Motion.[23] In support of her objection, she raises a litany of issues but ultimately consents to modification, so long as it increases Debtor's monthly payment almost 300%. The Trustee notes that Debtor's proposed modification would reduce payments to unsecured claimants from 37% to 24% and that Debtor previously "budgeted but did not pay" the § 1305 claims.[24] Debtor now seeks to direct Trustee to pay these claims through the plan and will increase her plan payment to do so.[25]

Trustee argues that "[t]he proposed modification fails to provide for all the Debtor(s)' disposable income [11USC § 1325(b)(1)] based on income higher [sic] and, as a result, the Debtor(s) has/have failed to file a Chapter 13 Plan in good faith [11 USC § 1325(a)]."[26] Trustee further argues that Debtor has failed to cooperate with the Trustee pursuant to § 521(a)(3)–(4) by failing to provide documentation of $700 per month of out-of-pocket medical expenses, $438 per

---

[20] *Id.* (pursuant to Fed. R. Evid. 201, the Court takes judicial notice that the average wintertime temperatures in Moscow, Idaho, where Debtor resides, range from 29–39° Fahrenheit. National Environmental Satellite, Data, and Information Service, *Summary of Monthly Normals 1991-2020, Moscow U of I, ID Station*,
https://www.ncei.noaa.gov/access/services/data/v1?dataset=normals-monthly-1991-2020&stations=USC00106152&format=pdf&dataTypes=MLY-TMAX-NORMAL,MLY-TMIN-NORMAL,MLY-TAVG-NORMAL,MLY-PRCP-NORMAL,MLY-SNOW-NORMAL
(generated Oct. 8, 2025)).

[21] *Id.*

[22] Doc. 153 (the "Motion").

[23] Doc. 158.

[24] *Id.*

[25] *Id.* at 1.

[26] *Id.* at 2 (bracketed citations in original). This Court notes that the Trustee's use of a form failed to adequately apprise this Court of the specific grounds for the objection and, in general, presents a confused argument.

MEMORANDUM OF DECISION – 4

month of charitable contributions, and $350 per month for a car payment.[27]

Trustee contends that Debtor's monthly plan payment should be increased to $3,253.70—nearly double Debtor's proposed modified payment of $1,683.70. Trustee argues that this amount uses Debtor's monthly figure as a starting point then adds $232 per month for understated income, $438 for overstated charitable contributions, $532 for overstated medical expenses, and $350 for the unsubstantiated car payment. Additionally, Trustee objects to paying interest on the § 1305 claims because "they are not a 'priority' claim and no interest was requested in the proof of claim."[28] Trustee is particularly concerned with Debtor's representations in previous modifications that she would increase her tax withholdings to eliminate the possibility of postpetition tax claims.[29]

Finally, Debtor testified that the monthly payment of $1,683.70 per month is "the highest that [she] felt like [she] could maybe squeak by with."[30] She explained her modification represents the maximum plan payment she can afford to make each month.

V.   **Applicable Law and Analysis**

A.  **Postpetition Tax Claims – § 1305**

Before considering modification under § 1329, this Court first considers § 1305. Pursuant to § 1305(a)(1), "[a] proof of claim may be filed by any entity that holds a claim against the debtor for taxes that become payable to a governmental unit while the case is pending." Section 1305 "creates the right permitting an eligible postpetition creditor to enter into the Chapter 13 bankruptcy proceeding, in contrast to most postpetition creditors who have no right to enter into an ongoing bankruptcy plan." *United States v. Fowler (In re Fowler)*, 394 F.3d 1208, 1214 (9th Cir. 2005). Here, the IRS and ISTC,[31] both governmental units, filed proofs of claim reflecting postpetition income taxes owed by Debtor and payable while the case is pending. These claims were filed two and four years after confirmation of Debtor's initial plan.

Allowance of postpetition claims is governed by § 1305(b). It states:

Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under section 502(a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date

---

[27] *Id.*

[28] *Id.* at 3.

[29] Doc. 158 at 2.

[30] Doc. 181 at 00:55:14–00:55:57.

[31] Claim Nos. 6-3 and 27-1, respectively.

MEMORANDUM OF DECISION – 5

of the filing of the petition.

Neither the Trustee nor any other party has objected to the IRS's and ISTC's § 1305 claims. As a result, the claims are allowed consistent with § 502. Payment of claims allowed under § 1305(a) may be included in a plan pursuant to § 1322(b)(6). Despite being allowed, payment of the claims requires scrutiny of Debtor's initial confirmed plan and the specific language of § 1329(a)(1).

Under § 1329(a)(1), a debtor may modify a plan to increase or decrease the amount of payment on claims of a particular class provided for by the plan. In this case, Debtor's initial plan did not specifically provide for the IRS's or ISTC's prepetition claims. Instead, it generally provided that, "[t]rustee's fees and *all allowed priority claims*, including domestic support obligations other than those treated in § 4.5 [of the plan], will be paid in full without post-petition interest."[32] Prepetition claims of taxing authorities enjoy priority treatment under § 507(a)(8). When Debtor initially confirmed her plan, the IRS's and ISTC's claims for prepetition taxes were allowed claims and received priority treatment, despite not being explicitly identified in the plan. Many courts have concluded a § 1305 claim filed months or years after confirmation is entitled to treatment as a priority claim.

### 1. Section 1305 claims are entitled to priority

Section 1305 claims are treated the same as any other claims—claims that would receive priority if filed prepetition are entitled to priority under § 1305. *See* Hon. Homer Drake, Hon. Paul Bonapfel, and Adam Goodman, *Chapter 13 Practice and Proc.*, § 19:5 (June 2025) ("Chapter 13 Pract. and Proc."); *In re Wright,* 66 B.R. 125 (Bankr. D. Kan. 1984)*; In re Bryant,* 1998 WL 412632 (Bankr. E.D. Va. Apr. 24, 1998)*; In re King*, 217 B.R. 623 (Bankr. S.D. Cal. 1998); *In re Woods*, 316 B.R. 522 (Bankr. N.D. Ill. 2004). As explained in these cases, § 1305 is an exception to the general bankruptcy rule that a plan should only provide for prepetition claims. Instead, § 1305 both allows postpetition claims to be filed and creates a "legal fiction" that these claims are prepetition claims.[33] *King*, 217 B.R. at 625. In this way, they receive the same treatment as a prepetition tax claim. Accordingly, postpetition tax claims enjoy priority treatment under § 507(a)(8).

Contrary to the thoughtful decisions in *Wright*, *Bryant*, *King,* and *Woods*, the Trustee contends the § 1305 claims are not priority claims. Her objection provides no explanation for her conclusion and no citation to authority.[34] She testified that "there is no specific provision in the

---

[32] Doc. 2 at ¶ 4.1 (emphasis added).

[33] Alternative interpretations have been espoused in *In re Jagours*, 236 B.R. 616 (Bankr. E.D. Tex. 1999) and by other courts. *See* Chapter 13 Pract. and Proc. § 19:5. However, this Court chooses to follow the majority of courts that have determined these alternative approaches to § 1305 claims would lead to absurd results.

[34] Independent of the Trustee, this Court surveyed the decisions, including *Jagours* and counter authority. Increasingly, this Court is finding that it has to scrutinize the Trustee's pleadings and

MEMORANDUM OF DECISION – 6

[Bankruptcy] Code that requires [§] 1305 claims to be paid."[35] Further, Trustee testified that she does not pay § 1305 claims "as a matter of course" because there is "nothing in the Idaho form plan that says [she] should pay [§] 1305 claims." According to Trustee, ordinarily when such a claim is filed, she will reach out to debtor's counsel who will decide whether the § 1305 claim is "something [the debtors] want to fund and pay" or "something that [the debtors] just want to have a 1305 claim."[36] Debtor has elected to pay the claims through the plan and has proposed funding to do so, but the Trustee remains opposed to modification.

Notably, a trustee's responsibilities are dictated by the Code, not a local form. *See, e.g., In re Doherty*, 229 B.R. 461, 464 (Bankr. E.D. Wash. 1999) ("The Trustee is a creature of the Bankruptcy Code and the Court"). The plan in this case provides for payment of priority claims. A body of case law exists concluding a § 1305 claim is a priority claim under § 507(a)(8). The Trustee's position ignores these decisions and instead relies on the absence of an explicit provision in the Code to justify her objection. She makes no effort to discuss the interplay between §§ 507(a)(8), 1305, and 1322(a)(2) and (6). This Court finds the rationales employed by the *Wright*, *Bryant*, *King*, and *Woods* courts far more persuasive than the Trustee's limited argument. The § 1305 claims filed by the IRS and ISTC are allowed, entitled to priority treatment, and must be paid.

### 2. Section 1305 claims are not entitled to interest

The Trustee further objects to interest on the § 1305 claims.[37] Priority claims are not generally entitled to interest. *Gill v. CBS Records (In re Peaches Records & Tapes, Inc.)*, 102 B.R. 193, 196 (citing *United States v. Tedlin (In re Mark Anthony Constr., Inc.)*, 89 B.R. 260 (BAP 9th Cir. 1987) and *In re John Clay and Co.*, 43 B.R. 797, 812 (Bankr. D. Utah 1984)). The Ninth Circuit Court of Appeals has expressly found that unsecured tax claims are not entitled to interest. *Fowler*, 394 F.3d at 1212. These interest payments were not included in Debtor's confirmed plan,[38] and a subsequent modification to include them was implicitly denied.[39] While the claims are allowed, this Court can discern no basis to include interest. Accordingly, the modification is only approved as to principal on the § 1305 claims.

---

citations to authority. *See In re Rych*, 2025 WL 2730790 (Bankr. D. Idaho Sept. 24, 2025).

[35] Doc. 181 at 02:41:34–02:41:43.

[36] *Id.* at 02:43:54–02:44:30.

[37] Doc. 158. Trustee's objection is vague, leaving this Court to survey controlling precedent to uncover the legal basis for her objection.

[38] Doc. 2.

[39] Docs. 57 and 64.

MEMORANDUM OF DECISION – 7

### B. Postconfirmation Modification – § 1329

Debtor seeks to modify her Chapter 13 plan after confirmation. Accordingly, her proposed modification is governed by § 1329. This provision allows a debtor, at any time after confirmation of a plan but before completion of payments under the confirmed plan, to increase or decrease the amount of payments on claims provided for by the plan. § 1329(a)(1). In the Ninth Circuit, "the only limits on modification are those set forth in the language of the Code itself, coupled with the bankruptcy judge's discretion and good judgment in reviewing the motion to modify." *Powers v. Savage (In re Powers)*, 202 B.R. 618, 622 (BAP 9th Cir. 1996).[40] When analyzing a proposed modification, courts should consider changes in a debtor's circumstances, particularly an increased or decreased ability to pay. *Berkley*, 613 B.R. at 551 (quoting *Mattson*, 468 B.R. at 369).

Pursuant to § 1329(b)(1), modification of a confirmed plan under § 1329(a) requires compliance with §§ 1322(a)–(b), 1323(c), and 1325(a). At issue in this proceeding is Debtor's compliance with § 1325(a)(3), which requires that the debtor's plan be proposed in good faith. Notably, § 1329(b)(1) does not require compliance with § 1325(b) for approval of a modification, which would generally require that a debtor's plan either pay all allowed unsecured claims in full or commit to plan payments all of the debtor's projected disposable income during the duration of the plan. Because "the plain language of § 1329(b) does not mandate satisfaction of the disposable income test of [§] 1325(b)(1)(B) with respect to modified plans . . . the disposable income test of § 1325(b) is not implicated under a strict reading of § 1329 (except . . . as a factor in determining the good faith of the plan modification)." *Sunahara*, 326 B.R. at 781–82; *see also Hall*, 442 B.R. at 760–61.

Modification of Debtor's plan to pay the § 1305(a) claims and increase her plan funding is consistent with § 1329, which permits either an increase or a decrease in the amount of payments on claims. § 1329(a)(1). Here, Debtor's proposed modification will increase payments to priority claims to account for the § 1305 claims. Additionally, the proposed modification complies with §§ 1322(a)–(b), 1323(c), and 1325(a). The Trustee objects, arguing Debtor is not acting in good faith in part because the amount ultimately received by general unsecured creditors will decrease from 37% to 24%. Although the Trustee makes much of this result, it is a result contemplated under § 1329(a)(1). As other courts have observed, "debtors are not in bad faith merely for doing what the Code permits them to do."[41]

Initially, the Court notes that trustees rarely object to a debtor's proposed modification when it seeks to increase monthly payments. Even rarer is a trustee finding that a debtor's

---

[40] *See also Berkley v. Burchard (In re Berkley)*, 613 B.R. 547, 551 (BAP 9th Cir. 2020) (quoting *Mattson v. Howe (In re Mattson)*, 468 B.R. 361, 369 (BAP 9th Cir. 2012)); *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768, 772 (BAP 9th Cir. 2005); *In re Hall*, 442 B.R. 754, 761 (Bankr. D. Idaho 2010).

[41] *Beaulieu v. Ragos (In re Ragos)*, 700 F.3d 220, 227 (5th Cir. 2012) *cited by Drummond v. Welsh (In re Welsh),* 711 F.3d 1120, 1132 (9th Circuit 2013).

MEMORANDUM OF DECISION – 8

proposed increase is insufficient and arguing for an even greater increase. Trustee argues modification should be permitted so long as Debtor increases her plan payment from $1,130 to $3,253. Absent a modification and increase in plan payment from $1,130 to $3,253, Trustee asserts the modification is the product of bad faith.

Trustee contends Debtor has not acted in good faith because she previously failed to pay certain postpetition taxes that were the subject of a prior modification.[42] Debtor testified that in 2023 she attempted to use a tax calculator to ensure the correct amounts were withheld from her earnings by her employer. Despite this effort, the calculations were inaccurate and additional taxes have become due during the pendency of this case. The Trustee makes much of Debtor's error and insists it is indicia of bad faith. Although Debtor's failure to correctly calculate her withholdings is disappointing, this Court is not convinced the failure was attributable to anything more than an innocent error.

As further support for her bad faith argument, Trustee has scrutinized $1,320 of claimed expenses.[43] At best, this scrutiny is officious. At worst, it reflects micro-management of Debtor's finances by the Trustee. For each of the disputed expense items, this Court has considered Debtor's testimony and finds Debtor has offered reasonable explanations for the expenses. While this Court agrees with the Trustee that Debtor should provide better documentation of her expenses, the documentation issues are not tantamount to bad faith. To the contrary, having observed Debtor's testimony, her demeanor and candor, the Court finds her testimony credible and sincere. She has not acted in bad faith.

This Court's analysis of the proposed modification is anchored in Debtor's ability to pay. The Court finds Debtor's testimony regarding her difficult—and in some cases, dangerous—living circumstances compelling. Debtor's home is falling apart. Her husband is unable to contribute to household income or maintenance.[44] Not surprisingly, Debtor encountered unexpected financial challenges during the plan term that compromised her ability to pay. She modified her plan, and her payment was reduced consistent with § 1329(a). In recognition of her obligations under the Code, Debtor now proposes a plan payment increase. While it may not satisfy the Trustee's demands, a monthly payment of $1,683 corresponds to Debtor's payment ability, while a payment of $3,253 significantly exceeds it.

### C. Conclusion

The Motion to increase plan payments to $1,638 is approved. The Trustee's insistence that the plan be modified to require a payment that clearly exceeds Debtor's ability to pay and ensures Debtor will not successfully complete her plan is not warranted by existing law. Such a payment is not feasible and essentially guarantees a future default on the plan. Instead, the Court

---

[42] Doc. 158 at 2–3.

[43] Doc. 158. Specifically, Trustee alleges that Debtor's out-of-pocket medical expenses are overstated by $532 per month, that Debtor failed to document a $350 per month car payment, and that Debtor has failed to tithe $438, despite including it in her budget.

[44] Doc. 181 at 00:47:37–00:51:08.

MEMORANDUM OF DECISION – 9

is convinced Debtor has the ability to increase her plan payment to $1,683, and doing so is consistent with the Code and broader purposes of Chapter 13.

Debtor's increased plan funding shall be utilized by the Trustee to pay the IRS's and ISTC's claims for taxes payable to a governmental unit while the case is pending. The claims are allowed and entitled to priority treatment under § 507(a)(8). The claims are not entitled to interest.

Finally, although Trustee did not object to the additional attorneys' fees sought in the Motion, there is a request for an award of attorneys' fees pursuant to Rule 8020(a)–(b) pending before the District Court in the appeal associated with this bankruptcy case. Debtor requested attorneys' fees based on allegations that Trustee's appeal of an interlocutory order was frivolous or, alternatively, vexatiously multiplied the proceedings.[45] The outcome of this request may impact the total attorneys' fees that are the subject of the Motion here. As a result, approval of the modification as it relates to the increased attorneys' fees will be denied without prejudice subject to the outcome of the appeal.

An order will be entered separately.

DATED: November 10, 2025

HON. BENJAMIN P. HURSH
U. S. BANKRUPTCY JUDGE
SITTING BY DESIGNATION
U.S. COURTS, DISTRICT OF IDAHO

---

[45] Shortly after the appeal was filed, this Court questioned Trustee's counsel regarding whether the orders subject to appeal were interlocutory and whether this Court should entertain a further motion to modify filed by the Debtor, treat the appeal as divesting it of jurisdiction, or otherwise let the appeal run its course. Trustee's counsel encouraged this Court to go forward with the forthcoming motion to modify by Debtor, while at the same time proceeding with the appeal. See Doc. 143.

MEMORANDUM OF DECISION – 10